IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARK M.,[1]

    Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

    Defendant.

Civ. No. 3:19-cv-00495-MC

OPINION AND ORDER

**MCSHANE, Judge**:

    Plaintiff brings this action for judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Social Security Disability Insurance benefits and Supplemental Security Income under Title XVI of the Social Security Act. The Court has jurisdiction under 42 U.S.C. § 405(g).

    Plaintiff argues that the Administrative Law Judge ("ALJ") erred by improperly relying on the Vocational Expert ("VE") testimony. While the VE testimony did not constitute substantial evidence to support the ALJ's job numbers finding, this error was harmless, and the Commissioner's decision is AFFIRMED.

## PROCEDURAL BACKGROUND

    Plaintiff protectively filed for benefits on June 30, 2015, alleging disability as of May 15, 2015. Tr. 206, 223.[2] His claim was denied initially and upon reconsideration. Tr. 110, 115, 125,

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party.
[2] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

129. Plaintiff timely requested a hearing and appeared before an ALJ at an initial hearing on July 17, 2017 and a supplemental hearing on December 14, 2017. Tr. 31, 49. The ALJ denied Plaintiff's claim on April 26, 2018. Tr. 25. Plaintiff sought review from the Appeals Council and was denied on March 4, 2019. Tr. 1. Plaintiff now seeks judicial review of the ALJ's decision.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986)). "'If the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996)). Finally, the ALJ need not discuss all evidence presented, but must explain why she rejected significant probative evidence. *See Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).

## DISCUSSION

The Social Security Administration uses a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012). The burden

of proof rests on the claimant for steps one through four and on the Commissioner for step five. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). At step five, the Commissioner's burden is to demonstrate that the claimant can make an adjustment to other work existing in significant numbers in the national economy after considering the claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). The Commissioner may satisfy this burden by referring to the Medical-Vocational Guidelines ("Grids") or by obtaining testimony from a VE. *Tackett*, 180 F.3d at 1100–01. If the Commissioner fails to meet its burden, then the claimant is considered disabled. *Id.*

Plaintiff stipulates to the findings of the ALJ at steps one through four. Pl.'s Op. Br. 4, ECF No. 14. Plaintiff only challenges the ALJ's step five determination. *Id.* At step five, the ALJ found that Plaintiff could work as a counter clerk, which is a light occupation, or a call-out operator, which is a sedentary occupation. Tr. 24. Relying on the VE's testimony, the ALJ stated that there were approximately 50,500 counter clerk jobs and 13,500 call-out operator jobs nationally. The ALJ found that these jobs exist in significant numbers in the national economy and, therefore, Plaintiff was not disabled. Tr. 24–25.

Plaintiff specifically challenges the VE and ALJ's job numbers. First, Plaintiff argues that because he is approaching advanced age with no transferable skills, the ALJ may only rely on job numbers from occupations above the level of sedentary work. Therefore, Plaintiff argues the ALJ erred in considering the sedentary occupation of call-out operator when determining whether Plaintiff is capable of performing work existing in significant numbers in the national economy. Pl.'s Op. Br. 5. The Court disagrees. The Grids establish that an individual who is approaching advanced age, is unable to return to their past work, and has no transferable skills is

disabled if limited to sedentary work. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.14. While Plaintiff is approaching advanced age, is unable to return to past work, and has no transferable skills, he is not limited to sedentary work. The ALJ found Plaintiff had the residual functional capacity to perform light work with limitations.³ Tr. 19. This residual functioning capacity encompasses both light and sedentary work. *See Giancone v. Colvin*, No. Civ. 3:12-cv-00495-JE, 2013 WL4521123, at * 10 (D. Or. Aug. 26, 2013) ("The ability to perform light work necessarily includes the ability to perform sedentary work unless additional limitations . . . preclude performance of sedentary work."). Because Plaintiff is not limited to sedentary work, the ALJ properly considered the 13,500 sedentary call-out operator jobs in making the step five determination.⁴

Second, Plaintiff argues that the ALJ improperly relied on the VE's testimony regarding the number of counter clerk jobs in concluding that a significant number of jobs that Plaintiff could perform exist in the national economy. Pl.'s Op. Br. 6. Based on the ALJ's residual functioning capacity assessment, the VE testified that Plaintiff could perform the job of counter clerk as defined by the Dictionary of Occupational Titles ("DOT"). Tr. 910–11. To obtain the number of counter clerk jobs available nationally, the VE used the data provided by the Standard Occupational Classification ("SOC") code system. Tr. 911–12. The VE testified that there were 101,000 counter clerk jobs available nationally but reduced this number by fifty percent to 50,500 counter clerk jobs available nationally in order to accommodate Plaintiff's need for a sit-

---

³ As noted, Plaintiff does not challenge this finding.
⁴ Plaintiff's argument that *Cooper v. Sullivan*, 880 F.2d 1152 (9th Cir. 1989) controls is meritless. There, the VE testified that Mrs. Cooper's "impairments limits her to at most light work. Applying the grids to Mrs. Cooper's case results in a finding of disability." *Id.* at 1157. Here, neither Plaintiff's RFC (of light work with limitations) or the VE's testimony compels a finding of disability under the Grids.

stand option.[5] Tr. 911. On cross-examination, however, the VE testified that the specific SOC group includes twenty-four occupations. Tr. 916. Of these twenty-four occupations, there are eight light and unskilled occupations—including counter clerk and furniture rental clerk which are the two occupations identified by the VE as jobs Plaintiff could perform—as well as sixteen other occupations of differing skill and exertional levels which Plaintiff is not capable of performing. Tr. 915–16. The 101,000 jobs only include the eight light and unskilled occupations in this SOC group.[6] *Id.* This means, however, that the number of available counter clerk (and/or furniture rental clerk) jobs is, in fact, less than 101,000. *See* tr. 916. Using Job Browser Pro, the VE testified that there are 1,500 counter clerk jobs nationally but that only 57% of these jobs are full-time which reduces the number to 855 counter clerk jobs in the national economy. Tr. 916–17. Job Browser Pro did not have any data regarding the number of available furniture rental clerk jobs. Tr. 916. Relying on this VE testimony, the ALJ found that 50,500 counter clerk jobs were available nationally. Tr. 24.

Plaintiff argues that the ALJ erred in concluding that 50,500 counter clerk jobs exist in the national economy because the VE was unable to provide independent job numbers for any of the light, unskilled occupations included in the SOC group other than counter clerk. Pl.'s Op. Br. 6. Rather, Plaintiff asserts that the VE testimony supports the conclusion that 855 counter clerk jobs are available nationally. *Id.* The Court agrees.

This case requires understanding the relationship between the DOT and SOC codes. The DOT defines jobs but does not provide statistics for how many jobs are available nationally.

---

[5] The VE also testified that Plaintiff could perform the job of furniture rental clerk as defined by the DOT. Tr. 912. However, because furniture rental clerks and counter clerks are in the same SOC group, the job numbers for both occupations are included in the 101,000 jobs available nationally. Tr. 912, 914.

[6] The VE did not identify the remaining six light, unskilled occupations in the SOC group and did not state whether Plaintiff was capable of performing any of these six occupations.

*Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 446 (2d Cir. 2012). The SOC codes provide such statistics, but these codes "are not useful for disability proceedings because they do not contain the same detailed occupational information as DOT codes. Thus, a VE must use some method for associating SOC-based employment numbers to DOT-based job types. The problem, however, is that DOT codes are much more granular than SOC codes[.]" *Id.* In other words, "[t]he only reliable statistics available are for broad categories of jobs, which may encompass not only the DOT code chosen by the VE to represent a job a claimant is capable of doing, but also many other jobs." *Haile v. Comm'r of Soc. Sec.*, No. Civ. 3:14-cv-01996-HZ, 2016 WL614428, at *6 (D. Or. Feb. 14, 2016). Due to the inherent imperfection of this system, the specific job numbers for each individual DOT occupation often do not exist. *Id.* at *6–7.

While the VE is not necessarily required to provide job numbers for each specific DOT occupation, the reviewing court "must still evaluate whether the VE's testimony, including his methods, constituted 'substantial evidence,' such that the ALJ's reliance on it was proper." *Id.* at *7. *See Evelia v. Saul*, No. Civ. 6:18-cv-01429-SB, 2019 WL5855987, at *2 (D. Or. Nov. 8, 2019). *See also Farias v. Colvin*, 519 F. Appx. 439, 440 (9th Cir. 2013); *Guiton v. Colvin*, 546 F. Appx. 137, 142 (4th Cir. 2013) ("Thus, if we required a VE to produce job statistics specific to the DOT-coded occupations a claimant can perform, it is unlikely that the Commissioner would *ever* succeed in satisfying her burden."). Where the VE relies exclusively on data from the SOC codes in formulating the job number estimates and does not use supplemental sources or methodologies to ensure the accuracy of the estimates, the VE's testimony does not constitute substantial evidence. *Haile*, 2016 WL614428 at *7 (finding that the VE testimony did not constitute substantial evidence upon which ALJ reliance was proper because the VE "testified that the *only* data he relied on in formulating his estimates came from the SOC codes" and

"candidly admitted that he did not know whether the data he relied upon was an accurate portrayal of the number of jobs available that Plaintiff could perform"). *See Evelia*, 2019 WL5855987, at *2 (finding that, even though the VE provided job numbers for an SOC group rather than independent numbers for specific DOT occupations, the VE testimony still constituted substantial evidence because "the VE explained he did not rely exclusively on the SCO . . . . Rather, the VE testified that his analysis began with 'a number of sources' including the SCO, '[a]nd then from there, we have methodology for coming up with approximation of numbers'") (alteration in original); *Abdich v. Colvin*, No. Civ. 6:12-cv-02172-SI, 2013 WL6839281, at *8 (D. Or. Dec. 27, 2013); *Schwanz v. Astrue*, No. Civ. 10-cv-795-HZ, 2011 WL4501943, at *8 (D. Or. Sept. 28, 2011).

Here, the VE testimony that 50,500 counter clerk jobs exist in the national economy does not constitute substantial evidence because the VE exclusively used the data from the SOC code to formulate this estimate. The 50,500 jobs include the eight different light, unskilled occupations in the SOC group, six of which were never identified as jobs Plaintiff could perform. This estimate is likely an overestimate of the number of jobs Plaintiff can perform, and the VE did not use any supplemental sources or methodologies to demonstrate that the estimate is, in fact, accurate. Therefore, because the VE's testimony that 50,500 counter clerk jobs exist in the national economy does not constitute substantial evidence, the ALJ's reliance on this testimony was improper. However, the VE's testimony that 855 counter clerk jobs exist in the national economy constitutes substantial evidence because the VE did not rely exclusively on the SOC code in formulating this estimate and instead also used Job Browser Pro. The ALJ, therefore, could properly rely on this testimony and conclude that 855 counter clerk jobs exist nationally.

While the ALJ erred in relying on VE testimony that did not constitute substantial evidence, this error is harmless because the 855 counter clerk jobs in addition to the 13,500 call-out operator jobs are a significant number. *See Davis v. Comm'r of Soc. Sec.*, Case No. 1:17-cv-00621-SAB, 2018 WL1779341, at *5-6 (E.D. Cal. Apr. 12, 2018) (finding that 15,000 jobs in the national economy was a significant number); *Evans v. Colvin*, No. ED CV 13-01500 RZ, 2014 WL3845046, at *2-3 (C.D. Cal Aug. 4, 2014) (finding that 6,200 jobs in the national economy was a significant number); *Peck v. Colvin*, No. 12-577, 2013 WL3121280 at *5 (C.D. Cal. June 19, 2013) (finding that 14,000 jobs in the national economy was a significant number); *Hoffman v. Astrue*, No. C09-5252RJB, 2010 WL1138341, at *7 (W.D. Wash. Mar. 19, 2010) (finding that 9,000 jobs in the national economy was a significant number).Therefore, Plaintiff is not disabled because he is able to perform work that exists in significant numbers in the national economy.

## CONCLUSION

For these reasons, the Commissioner's final decision is AFFIRMED.[7]

IT IS SO ORDERED.

DATED this 28th day of December, 2020.

/s/ Michael McShane
Michael J. McShane
United States District Judge

---

[7] Even assuming the ALJ's error was harmful, this is not the rare circumstance where a remand for benefits is appropriate. *See Haile*, 2016 WL 614428 at *8 (noting remand for additional proceedings appropriate because "the ALJ must elicit further testimony from the VE in order to determine whether substantial evidence exists that there are significant numbers of jobs that Plaintiff can perform.")